*Decision will be entered under Rule 50.*

ADIRONDACK SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37110. Promulgated May 6, 1931.

*Henry T. Dorrance, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* and *O. W. Swecker, Esq.,* for the respondent.

62

**OPINION.**

VAN FOSSAN: The first issue for consideration is whether or not the petitioner is entitled to deduct from income for the year 1925 a loss of $18,499 on 3,700 shares of the common stock of the Saranac Pulp & Paper Company. The petitioner purchased this stock in May, 1925, and claims that at the end of that year it had no market value and was worthless. The petitioner, therefore, inventoried the stock at a value of $1 as of December 31, 1925, and contends that as a dealer in securities it had the right under the statute and regulations to deduct the difference between this inventory value and the cost of the stock from income for the taxable year.

The applicable sections of the statute are section 205 and section 234 (a) (4) and (5) of the Revenue Act of 1926. Section 205 is as follows:

Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Section 234 (a) (4) and (5) provides, in part, as follows:

(a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \* \* \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise \* \* \*.

(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

Article 1615 of Regulations 69, under the Revenue Act of 1926, is in part as follows:

. A dealer in securities, who in his books of account regularly inventories unsold securities on hand either (a) at cost or (b) at cost or market, whichever is lower, or (c) at market value, may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed. shall be included in or attached to the return, that all the securities must be inventoried by the same method and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the pupose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom \* \* \*. Taxpayers who buy and sell or hold securities for investment or speculation, and not in the course of an established business, and officers of corporations and members of partnerships, who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule.

The evidence in this proceeding discloses that the petitioner did not operate as a broker and there is no evidence that it regularly sold securities to customers. The proof clearly shows, however, that the petitioner bought and sold securities solely for its own account. Article 1615 of Regulations 69 defines a dealer in securities whose income may be determined by the use of inventories as an individual, partnership, or corporation regularly engaged in the purchase of securities and their resale to customers. Obviously, the petitioner does not come within this definition, but, on the contrary, it appears that the petitioner bought, sold or held securities for investment or speculation. Therefore, it is not entitled, under section 205 of the Revenue Act of 1926 and article 1615 of Regulations 69, to deduct from income an inventory loss.

The petitioner further contends, with reference to the first issue, that the common stock of the Saranac Pulp & Paper Company was ascertained to be worthless at the end of 1925 and that it is, therefore, entitled to deduct its cost from income for that year. We are of the opinion that the evidence does not support this contention.

The petitioner paid $50 a share for the stock in May, 1925. Although the Pulp & Paper Company was not in good financial condition at the end of 1925 and was operated at a loss at that time, yet it was a going concern and it appears that its financial condition markedly improved during the years 1926 and 1927. Under these conditions we can not hold that the evidence shows that this stock was ascertained to be worthless at any time in the year 1925. It follows that the petitioner is not entitled to deduct a loss on such stock from income for the year 1925.

The remaining issue is whether or not the petitioner is entitled to a deduction of a loss resulting from the transaction by which it acquired 1,052 shares of the preferred stock of the Saranac Pulp & Paper Company. The transaction in question was an unusual one. The stock corporation law of the State of New York provided that a corporation could not issue its preferred stock except for cash, labor done or property received, in an amount equaling the par value of the stock issued. Therefore, the Pulp & Paper Company delivered its check for $105,200 to Guibord on account of its debt to him. Upon receipt of this sum Guibord gave his check for $105,000 to the petitioner, on account of his debt for that amount, and petitioner thereupon gave its check for $105,200 to the Pulp & Paper Company in exchange for 1,052 shares of the latter corporation's preferred stock. At the date of this transaction Guibord could not have paid the petitioner $105,000 had he not received that amount from the Saranac Pulp & Paper Company. At the same date the preferred stock of the latter corporation, for which the petitioner delivered its check for $105,000, was not worth in excess of $10,520 and the stock was inventoried by the petitioner at that sum as of December 31, 1925, which was five days after the transaction in question was closed.

The net result of this transaction, so far as concerns the petitioner, was that the petitioner voluntarily accepted an asset worth $10,520 in consideration of the surrender by it of a claim against Guibord, its owner and president, amounting to $105,000. The petitioner now seeks to deduct from income for the year 1925 as a loss the difference between the amount paid for the stock and its inventory value. This difference amounts to $94,680.

For the reasons hereinbefore stated, with reference to the first issue, the petitioner was not a dealer in securities who was entitled to deduct from income an inventory loss. The petitioner contends, however, that its claim against Guibord was worthless and that, therefore, it is entitled to the deduction claimed as hereinbefore set forth.

In our opinion the evidence does not disclose that the petitioner's claim against Guibord for $105,000 was worthless in whole or in

part at the date of the transaction now in question or at the end of the year 1925. It appears that Guibord was in bad financial condition and it is stated that he was facing bankruptcy. There is no evidence, however, that involuntary bankruptcy proceedings were brought against him at this or at any subsequent time nor is there evidence that he at any time went into voluntary bankruptcy. Moreover, while it appears that his claim against the Saranac Pulp & Paper Company was his only unencumbered asset, there is no proof as to the amount of his debts or as to the amount of his equity, if any, in his encumbered assets. So far as the proof actually shows Guibord's debt to the petitioner might have been presently collectible in part and there is nothing to show, or from which it can be inferred, that the whole amount of the debt could not have been collected ultimately. As a matter of fact, the balance of the debt over and above the value of the preferred stock received was voluntarily canceled by the petitioner, which, so far as the proof shows, made no attempt whatever to collect it.

Upon the proof we do not consider it necessary to discuss the suggestions made by the respondent in his brief to the effect that the transaction in question was characterized by a lack of good faith. In any event we can not hold that it is shown that the debt owed by Guibord to the petitioner was worthless, either in whole or in part.

*Decision will be entered for the respondent.*